UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOSE JUAN SILVA | ) | CASE NO. CV 05-01293 MMM (AJW) |
| Petitioner, | ) ) ) | |
| vs. | ) ) ) | ORDER ADOPTING AND SUPPLEMENTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |
| CHARLES HARRISON, | ) ) | |
| Respondent. | ) ) ) ) ) | |

      Pursuant to 28 U.S.C. § 636, the court has reviewed the petition, all of the records and files herein, the Report and Recommendation of United States Magistrate Judge Andrew J. Wistrich, and the objections filed by respondent. Based on its *de novo* determination of the issues presented, the court concurs with and adopts the findings and conclusions set forth in Judge Wistrich's Report and Recommendation as supplemented by this order.

      Respondent objects to the fact that Judge Wistrich made a *de novo* determination as to whether the prosecutor's reason for rejecting African-American jurors was pretextual. Judge Wistrich determined that use of the *de novo* standard was appropriate because "'the [state] court never fulfilled its affirmative duty to determine if the defendant had established purposeful

discrimination.'" *Green v. Lamarque*, 532 F.3d 1028, 1031 (9th Cir. 2008) (quoting *Lewis v. Lewis*, 321 F.3d 824, 832 (9th Cir. 2003)). In particular, Judge Wistrich concluded that the state court had unreasonably applied clearly established federal law with respect to the comparative juror analysis, in that no comparative juror analysis had occurred.[1] Respondent's objections do not challenge Judge Wistrich's conclusion that no comparative juror analysis occurred. Rather, respondent appears to contend that notwithstanding the lack of a comparative juror analysis, the trial court engaged in the sort of sensitive inquiry that is required.[2]

In *Miller-El v. Dretke*, 545 U.S. 231 (2005), the Supreme Court made clear that a comparative juror analysis is required even when it is not requested or attempted in the state court. *Id.* at 241 n. 2 ("[T]he dissent conflates the difference between evidence that must be presented to the state courts to be considered by federal courts in habeas proceedings and theories about that evidence"); *Kesser v. Cambra*, 465 F.3d 351, 361 (9th Cir. 2006) (en banc) ("Furthermore, in *Miller-El*, the Court made clear that the comparative analysis is required even when it was not requested or attempted in the state court").[3]

The court's review of the record confirms Judge Wistrich's conclusion that the trial court

---

[1]Report and Recommendation of Magistrate Judge ("R&R"), Docket No. 18, May 26, 2009) at 17-18.

[2]Judge Wistrich's conclusion is further supported by *Cook v. Lamarque*, __ F.3d __, 2010 WL 27400 (9th Cir. Jan. 7, 2010), which was decided following issuance of his Report and Recommendation. The *Cook* court stated that "where a state court fails to apply comparative juror analysis in making its factual determination regarding pretext, no AEDPA deference is due because its failure to compare seated jurors with excused jurors in conducting its analysis is contrary to federal law." The *Cook* court ruled that under such circumstances, a federal court "may examine petitioner's *Batson* claim *de novo*." *Id.* at *18.

[3]The Ninth Circuit has concluded that the Supreme Court's use of comparative analysis in *Miller-El* was merely a clarification of the three-step analysis set forth in *Batson v. Kentucky*, 476 U.S. 79 (1986). *Boyd v. Newland*, 467 F.3d 1139, 1146 (9th Cir. 2006) ("[I]f the Supreme Court's endorsement of comparative juror analysis on appeal constituted a new procedural rule, the Court would not have applied that rule to Miller-El, whose case came before the Court on an appeal from a denial of habeas corpus. Because the Court did engage in extensive comparative juror analysis, we can infer that *Miller-El II* must only have clarified the extant *Batson* three-step framework").

failed to undertake a sensitive inquiry regarding the circumstantial and direct evidence of intent that was available, including a comparative analysis of similarly situated jurors.

In *Green*, 532 F.3d 1028, the Ninth Circuit held that the state court's failure to conduct a comparative juror analysis required that the federal court perform one *de novo*:

> "Here, the trial court failed to undertake '"a sensitive inquiry into such circumstantial and direct evidence of intent as may be available,"' including a comparative analysis of similarly situated jurors, as required by clearly established Supreme Court law at the time of the trial. See *Batson*, 476 U.S. at 93[ ](quoting *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266[ ]; see also *Miller-El*, 545 U.S. at 241[ ].
> 
> The California Court of Appeal's analysis did not remedy the trial court's error. The majority simply found the prosecutor had offered race-neutral reasons, cited and discussed several cases deferring to the trial court's evaluation of witnesses, and stopped there. It failed to reach step three in the *Batson* analysis. By merely reiterating the prosecutor's stated reasons, and then finding they were race-neutral, without analyzing the other evidence in the record to determine whether those reasons were in fact the prosecutor's genuine reasons, the California Court of Appeal made exactly the same mistake for which the Supreme Court criticized the California courts in *Johnson v. California*, 545 U.S. [162,] 172-73 [(2005) (granting a petition for writ of habeas corpus filed under 28 U.S.C. § 2254), rev'g *People v. Johnson*, 30 Cal.4th 1302 [ ](2003).
> 
> On appeal, the state essentially asks us to presume the trial court found the prosecutor's race-neutral reasons for striking Deborah P. to be genuine when it denied Green's motion. Yet we must not make such a presumption where 'the court never fulfilled its affirmative duty to determine if the defendant had established purposeful discrimination.' *Lewis*[ ], 321 F.3d [at] 832[ ]. We must conduct that analysis *de novo*, rather than remanding for the state courts to do so. See *Miller-El*, 545 U.S. at 241[ ]; *Kesser*[ ], 465 F.3d [at] 356-58, 360[ ]." *Green*,

3

532 F.3d at 1030-31 (footnote omitted).

Respondent's attempt to distinguish *Green* is unavailing. Respondent appears to characterize *Green* as a case in which the trial court failed utterly to engage in a sensitive inquiry regarding the prosecutor's motivation. He contrasts this with the instant case, in which he contends the trial court engaged in a sensitive inquiry despite the fact that it did not conduct a comparative juror analysis. That this is not the case, however, is made clear in *Kesser*. There, the court discussed the need for the trial court, at the third step of the *Batson* process, to "evaluate the record and consider each explanation *within the context of the trial as a whole* because '"[a]n invidious discriminatory purpose may often be inferred from *the totality of the relevant facts*."'" *Kesser*, 465 F.3d at 359-60 (citing *Miller-El* and *Batson* for the proposition "that *Batson* requires inquiry into '"the totality of the relevant facts" about a prosecutor's conduct'" (emphasis added)). "The '"totality of the relevant facts,"' the *Kesser* court explained, "includes the prosecutor's statements about his jury selection strategies and his explanations (racial and nonracial) for striking minority jurors," as well as "the characteristics of people he did not challenge." *Id*. at 360 ("'If a prosecutor's proffered reason for striking a [minority] panelist applies just as well to an otherwise-similar [nonminority] who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson*'s third step," quoting *Miller-El*, 545 U.S. at 241 (alterations original)). The *Kesser* court noted that "[t]he Court in *Miller-El* applied comparative juror analysis to a case originally tried in 1986, remanded for a *Batson* hearing in 1988, and appealed under AEDPA in 2000. The Court's holding means that the principles expounded in *Miller-El* [– including the need for consideration of the totality of relevant facts and comparative juror analysis –] were clearly established Supreme Court law for AEDPA purposes at least by the time of the last reasoned state court decision in *Miller-El*, handed down in 1992. . . ." *Id*. at 360 n. 3; *id*. at 361 ("[I]n *Miller-El*, the Court made clear that the comparative analysis is required even when it was not requested or attempted in the state court").

Consequently, the state court's failure to conduct a comparative juror analysis leads ineluctably to the conclusion that it failed to undertake the sensitive inquiry required regarding evidence of intent. As mandated by *Green*, Judge Wistrich therefore conducted such analysis *de*

4

*novo*.

For the reasons stated in Judge Wistrich's Report and Recommendation, and for the further reasons stated herein, IT IS ORDERED that judgment be entered consistent with Judge Wistrich's order and this order, and that the Petition for Writ of Habeas Corpus be granted.  IT IS FURTHER ORDERED that the clerk serve copies of this Order, the Magistrate Judge's Report and Recommendation, and the judgment on petitioner by United States mail.

DATED: January 22, 2010

                                              MARGARET M. MORROW
                                        UNITED STATES DISTRICT JUDGE